**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EMMANUEL PALMER,

       Plaintiff,                           **CIVIL ACTION NO. 09-CV-14642**

vs.

                                    **DISTRICT JUDGE DAVID M. LAWSON**

NICK LUDWICK, AUTUMN         **MAGISTRATE JUDGE MONA K. MAJZOUB**
ROMATZ, BARBARA HESSBROOK,
KENNETH FLORE, STEVEN HARRINGTON,
RYAN JACKSON, GARY HENSLEY, DONALD
BEAUREGARD, CHEOPELO, GLEN THELEN,
ERIC SHAW, and PATRICIA CARUSO,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:** This Court recommends that the Motion for Summary Judgment filed by Defendants Ludwick, Flore, Shaw, Beauregard, Hensley, Jackson, Harrington, Thelen, Romatz, and Hessbrook (docket no. 22) be **GRANTED IN PART**, and Defendants Ludwick, Jackson, Harrington, and Romatz be dismissed from this action. The Court further recommends that Plaintiff's cruel and unusual punishment claim directed against Defendant Hensley be dismissed.

**II.**     **REPORT**:

This is a *pro se* civil rights action filed by a Michigan state prisoner pursuant to 42 U.S.C. § 1983 and state law. (Docket no. 2). Plaintiff is currently on parole. Defendants are St. Louis Correctional Facility ("SLF") Warden Nick Ludwick, Lieutenant Kenneth Flore, Sergeant Eric Shaw, Resident Unit Officers ("RUOs") Donald Beauregard, Gary Hensley, Ryan Jackson, and Steven Harrington, Corrections Officers ("CO") Glen Thelen and Unknown Cheopelo, and

1

Registered Nurses ("RNs") Autumn Romatz and Barbara Hessbrook. Defendant Cheopelo has not yet been served and is not included in the instant Motion for Summary Judgment. Plaintiff has filed a response to the Motion for Summary Judgment. (Docket no. 28). This case has been referred to the undersigned for general case management. (Docket no. 5). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). This matter is now ready for ruling under 28 U.S.C. § 636(b)(1)(B).

**A. Facts and Procedural History**

Plaintiff alleges that on June 29, 2008 he sent a medical kite marked "urgent" to Health Care complaining of severe pain to his right big toe. (Docket no. 2 at ¶ 3). The next day Defendant Flore noticed that the Plaintiff was limping and sent him to Health Care. (Docket no. 2 at ¶ 4). When Plaintiff arrived at Health Care, Defendant Harrington ordered him to leave because he was not properly dressed. (Docket no. 2 at ¶ 5). Plaintiff states that he returned to his housing unit and got properly dressed, but that he was not sent back to Health Care on June 30, 2008. (Docket no. 2 at ¶ 5). Plaintiff also alleges that on June 30, 2008 he received a response from Defendant Romatz to his medical kite sent on June 29, 2008. Plaintiff alleges that Defendant Romatz denied him medical services without examining him first, and ridiculed him in her written response to his medical kite. (Docket no. 2 at ¶ 6).

Plaintiff alleges that as a consequence of being denied medical attention for his injured toe, he fell down a flight of brick and steel stairs injuring his right hip, right shoulder, and right rib cage. (Docket no. 2 at ¶ 7). Defendant Hessbrook responded to the incident, examined his rib cage and shoulder, but allegedly failed to examine his hip. Plaintiff states that Defendant Hessbrook used derogatory language towards the Plaintiff, then ordered a corrections officer to give Plaintiff ice for

2

the swelling, transport the Plaintiff to his bed via wheelchair, and place him on lay-in status. (Docket no. 2 ¶ 8).

Plaintiff claims that he was unable to walk to his medical call-out on July 2, 2008 and that Defendant Jackson informed him that "if you can't walk then you refused medical," and closed the Plaintiff's cell door, denying him his medical call-out. (Docket no. 2 at ¶ 9). Also on July 2, 2008 Plaintiff claims that he was denied meals because he was unable to walk to the chow hall. (Docket no. 2 at ¶ 10). Plaintiff states that Defendant Hensley observed Plaintiff sitting in the hallway in pain and ordered him to walk to the chow hall if he wanted to eat. After Plaintiff told Defendant Hensley that he could not walk and needed to go to Health Care, Defendant Hensley allegedly ordered Plaintiff back into his cell and told him that he would call Health Care and food service to get him a lay-in food tray. (Docket no. 2 at ¶ 10). Plaintiff states that he was not seen by Health Care on that day and he did not receive a food tray.

Plaintiff alleges that on July 3, 2008 he dragged himself to the chow hall, but collapsed when he could no longer take the pain. (Docket no. 2 at ¶ 11). Plaintiff claims that Defendants Flore, Beauregard, Thelen, and Shaw watched the Plaintiff sit on the ground in agony. (Docket no. 2 at ¶ 11). Plaintiff states that he pleaded with the Defendants to call medical but they refused him medical care. Plaintiff contends that Defendant Flore eventually ordered a wheelchair, then ordered the Plaintiff to guide the wheelchair back to his housing unit instead of to Health Care. When Plaintiff explained that he could not move the wheelchair because of his injured right shoulder, Defendant Flore allegedly ordered the Plaintiff to be handcuffed and taken to administrative segregation for disobeying his order to take the wheelchair back to his housing unit and for creating a disturbance. (Docket no. 2 at ¶ 12).

Plaintiff states that within thirty minutes of arriving in administrative segregation he was lying naked on the floor of a shower. He claims that he explained what happened to Defendant Hessbrook and she had the Plaintiff taken out of the shower, but she refused him medical care other than to give him Tylenol for the pain. Plaintiff states that when he asked to see a doctor and have x-rays taken, Defendant Hessbrook responded by stating that "you will heal in Administrative Segregation." (Docket no. 2 at ¶ 13). Plaintiff alleges that he was denied medical care for eighteen days while in administrative segregation. He seeks damages and sues the Defendants in their individual capacities only. (Docket no. 2).

**B.     Governing Law**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.*

**C.     Analysis**

**1.      Exhaustion of Administrative Remedies**

Defendants claim that Plaintiff failed to properly exhaust his administrative remedies as to Defendants Ludwick, Flore, Shaw, Beauregard, Jackson, Thelen, and Romatz because he did not file a grievance naming them regarding any issue raised in the Amended Complaint.

The record shows that Plaintiff appealed three grievances through Step III related to the

events alleged in his Amended Complaint. In Grievance no. SLF 08-07-0957-12e1 Plaintiff complains that Defendant Harrington ordered him to leave Health Care because he was not properly dressed. Plaintiff also complained that Defendant Hessbrook failed to properly examine him or order x-rays following his fall. (Docket no. 22, Ex. D). In Grievance no. SLF 08-07-0951-17A Plaintiff also complains that Defendant Harrington threatened him and wrongfully ordered him to leave Health Care because he was not properly dressed. (Docket no. 22, Ex. F).

In Grievance no. SLF 08-07-0962-03e Plaintiff complains that he did not receive meals on July 2, 2008 while on lay-in status and that Defendant Hensley failed to call Health Care and tried to force the Plaintiff to walk even after the Plaintiff informed him that he could not walk. Plaintiff also complained that he was denied his medical call-out because he could not walk. (Docket no. 22, Ex. E).

Plaintiff argues that in addition to the above three grievances, he filed three Step I grievances on July 4, 2008 against Defendants Ludwick, Romatz, Flore, Shaw, Beauregard, Jackson, and Thelen, but that he received no response to the grievances. (Docket no. 28). Plaintiff claims that he attempted to file Step II grievances while he was in administrative segregation but that he never received Step II grievance forms, and that he was denied access to the grievance process. (Docket no. 28).

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust all available administrative remedies before filing any federal lawsuit challenging prison conditions. "If prison officials prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system through actions such as withholding necessary forms . . . those remedies are not 'available' to the prisoner and he has not forfeited his

5

ability to file suit." *Smith v. Buss*, No. 09-1980, 364 Fed.Appx. 253, 255 (7th Cir. Jan. 29, 2010). *See also Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

### a. Defendant Ludwick

The record shows that Plaintiff wrote three Step I grievances dated July 4, 2008. (Docket no. 28, Ex. 1). Grievance no. 1 states that in a prior grievance Plaintiff informed Defendant Ludwick that Defendant Harrington might retaliate against him, and that Plaintiff was now "in the hole for some bullshit" related to something C.O. Harrington told Lt. Flore. (Docket no. 28, Ex. 1). Grievance no. 1 also states that Plaintiff had been "through hell" since he informed Warden Ludwick of the dangers of him being at the SLF facility. Grievance no. 1 does not relate to events complained of in Plaintiff's Amended Complaint. Consequently, even if the Plaintiff could show that he was denied access to the grievance process while in administrative segregation, his claims against Defendant Ludwick should be dismissed.

### b. Defendants Flore, Shaw, Thelen, Beauregard, Romatz

Grievance no. 2 states that Defendants Flore, Shaw, Thelen, and Beauregard watched him drag his leg in great pain and fall to the ground before they ordered a wheelchair and instructed the Plaintiff to wheel himself back to his housing unit, even though they were informed by the Plaintiff that he had injured his shoulder and needed assistance managing the wheelchair. (Docket no. 28, Ex. 1). Grievance no. 3 states that in a medical kite response Defendant Romatz ridiculed Plaintiff about buying shoes, did not provide any treatment advice, and did not place him on medical call-out, thus denying him medical care. (Docket no. 28, Ex. 1).

The grievances allegedly filed by Plaintiff on July 4, 2008 bear no outward signs that they

were received at Step I. Specifically, there are no grievance identifiers recorded on the forms and no dates recorded in the section designated "Date Received at Step I." Defendants have offered no argument or evidence to rebut Plaintiff's assertion that he filed the grievances and that the grievance process was not available to him while he was in administrative segregation. When reviewing a motion for summary judgment the Court must view the facts in the light most favorable to the Plaintiff and accept Plaintiff's version of the events as true. Accordingly, the Court should find that questions of fact exist as to whether administrative remedies were available to the Plaintiff while he was in administrative segregation and whether he was prevented from exhausting his administrative remedies as to Defendants Flore, Shaw, Thelen, Beauregard, and Romatz.

    **c.**    **Defendant Jackson**

Plaintiff states in his Amended Complaint that Defendant Jackson denied him his medical call-out on July 2, 2008 because the Plaintiff could not walk to Health Care. (Docket no. 2). The record shows that Defendant Jackson was not named relative to this conduct in any of the grievances appealed through Step III, or in the three Step I grievances dated July 4, 2008.

In Grievance no. SLF 08-07-0962-03e Plaintiff complains of actions taken by Defendant Hensley and states that he was denied his medical call-out because he could not walk. (Docket no. 22, Ex. E). Although this grievance complains of the same conduct Plaintiff now attributes to Defendant Jackson, the grievance does not identify Defendant Jackson or give reasonable notice that Defendant Jackson was involved in denying Plaintiff medical care. Consequently, Plaintiff has failed to demonstrate that he exhausted his administrative remedies against Defendant Jackson and his claims against Defendant Jackson should be dismissed. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules.").

**2.      Eighth Amendment Deliberate Indifference to Serious Medical Need**

To establish a cognizable claim for a violation of the Eighth Amendment under a theory of deliberate indifference to a serious medical need, an inmate must show that he suffered from a serious medical need and the official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted). An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 837. A defendant cannot be held vicariously liable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Instead, to prevail under § 1983 a plaintiff must show that each defendant was personally involved, or otherwise authorized, the alleged unconstitutional conduct. *See e.g. Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

      **a.      Defendant Ludwick**

Plaintiff alleges that Defendant Ludwick failed to stop known repeated examples of negligent and deliberately indifferent acts, which disclosed a pattern of conduct that would cause impending risks to the Plaintiff's health and safety in violation of the Eighth Amendment. Plaintiff has failed to demonstrate that Defendant Ludwick actively participated in, encouraged, or knowingly acquiesced in any unconstitutional conduct. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Accordingly, even if the Court were ultimately to conclude that the Plaintiff was prevented

from exhausting his administrative remedies as to Defendant Ludwick relative to the claims in Plaintiff's Amended Complaint, Defendant Ludwick is entitled to dismissal on the grounds that Plaintiff has not alleged or demonstrated that Defendant Ludwick was personally involved in the complained-of acts.

      **b.     Defendants Romatz and Harrington**

Plaintiff's claims against Defendants Romatz and Harrington concern the denial of medical care related to an injury to Plaintiff's right big toe. The evidence submitted by Plaintiff and Defendants shows that Plaintiff sustained a gunshot wound to the big toe of his right foot in 2003 which becomes sore when he wears state issued black shoes. (Docket no.28, Ex. 9; Docket no. 22, Ex. A, F). Plaintiff states that on June 29, 2008 he submitted a medical kite to Health Care marked "urgent" complaining of severe pain to his right big toe. (Docket no. 2). The record indicates that Plaintiff was seeking special shoes and stated that he needed a bandage to be put on his foot because he was shot in the toe in 2003. (Docket no. 22, Ex. F, Step I Grievance Response).

Defendant Romatz responded to the Plaintiff's medical kite. The kite response indicates that Plaintiff complained that his state issued black shoe hurt his right toe and that there was a gunshot wound to the big toe. (Docket no. 28, Ex. 9). Defendant Romatz commented that Plaintiff could purchase gym shoes on his own, and that a gun shot wound to the big toe does not warrant the state buying the Plaintiff shoes. (Docket no. 28, Ex. 9).

With regard to Defendant Harrington, Plaintiff claims that he was sent to Health Care on June 30, 2008 because he was barely able to walk on his right foot, and that he was wrongfully sent back to his housing unit by Defendant Harrington because he was not properly dressed. SLF policy provides that every prisoner is required to wear his state-issue blues to Health Care, except during

9

an emergency. (Docket no. 22, Ex. H). The record shows that while he was in Health Care Plaintiff was informed by a nurse that he would be placed on call-out and that he was not in any immediate danger. (Docket no. 22, Ex. H). The record further indicates that Plaintiff did submit a kite and was subsequently seen for "an old injury to his toe." (Docket no. 22, Ex. F, Step II Grievance Response).

Based on the record before it the Court should find that Plaintiff has failed to demonstrate that his old gunshot injury and sore toe presented a serious medical injury sufficient to sustain an Eighth Amendment claim. Furthermore, the record before the Court does not substantiate Plaintiff's claims that Defendant Harrington and Romatz had the requisite culpable state of mind. Accordingly, even if the Court were to conclude at a later date that the Plaintiff was prevented from exhausting his claims against Defendant Romatz, and therefore was not barred from bringing this action against her, Defendant Romatz is entitled to dismissal on the grounds that Plaintiff has not demonstrated that she was deliberately indifferent to his serious medical needs. Defendant Harrington is also entitled to dismissal of Plaintiff's claims.

### c. Defendants Hessbrook, Hensley, Flore, Beauregard, Thelen, and Shaw

Plaintiff's claims against Defendants Hessbrook, Hensley, Flore, Beauregard, Thelen, and Shaw relate to conduct which occurred after Plaintiff allegedly fell down a flight of stairs and injured his right hip, shoulder, and rib cage. Plaintiff claims that his shoulder was swollen, he could not walk, and he was in severe pain. The record shows that Plaintiff was evaluated by nursing on July 1, 2008 for an alleged unwitnessed fall down stairs in his housing unit. (Docket no. 22, Ex. D, Step I Grievance Response). The nursing evaluation findings were negative for injury other than his verbal complaints of pain. The record indicates that neither of the nursing assessments on July 1, 2008 or July 3, 2008 indicated a need for an x-ray of the Plaintiff's alleged injuries. (Docket no.

10

22, Ex. D, Step I Grievance Response). The affidavit of Defendant Hessbrook substantiates those findings. In her affidavit, Defendant Hessbrook RN, states that she performed a complete assessment of Plaintiff following his alleged fall, and concluded that all physical findings were negative except that Plaintiff would not put weight on his right leg. Defendant Hessbrook concluded that an x-ray was not necessary. Her affidavit states that a lay-in was ordered, along with ice and ibuprofen. (Docket no. 22, Ex. G).

Defendant Hessbrook's affidavit further states that Plaintiff refused a visit to Health Care on July 2, 2008. In contrast, Plaintiff claims that on July 2, 2008 he was denied his medical call-out because he was unable to walk to Health Care. (Docket no. 2). When Plaintiff was seen in Health Care on July 3, 2008, the physical assessment was reportedly negative, although once again Plaintiff would not put any weight on his right leg. (Docket no. 22, Ex. G).

The record provided to the Court is devoid of any excerpts from Plaintiff's medical record. However, it shows that the Plaintiff would not put weight on his right leg, and he complained that he was in severe pain and could not walk. Defendants have not provided sufficient evidence to show that there is no genuine issue of material fact that Plaintiff sustained a serious injury in the fall, and that the Defendants were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, the Court should find that issues of material fact remain as to whether Defendants Hessbrook, Hensley, Flore, Beauregard, Thelen, and Shaw were deliberately indifferent to Plaintiff's serious medical need by denying Plaintiff's requests for medical treatment following his alleged fall down the stairs.

3. **Eighth Amendment Cruel and Unusual Punishment**

Plaintiff claims that he was denied breakfast, lunch and dinner meals on July 2, 2008, and

11

that Defendant Hensley was at least partially responsible for this deprivation. (Docket no. 22, Ex. E). The Eighth Amendment protects a prisoner from the deliberate and unnecessary deprivation of food that is essential to normal health. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). Food deprivation lasting more than a few days may be serious enough for an Eighth Amendment violation. *See Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999) (no food for 3 to 4 days at a time). However, there is authority for the position that the deprivation of three meals in one day is not sufficiently serious to pose a serious risk of harm to a prisoner. *See Adams v. Prunick*, No. 08-CV-156, 2010 WL 2584031, at *2 (W.D. Mich. June 24, 2010).

Defendant Hensley states by affidavit that only the dinner meal was served during his shift on July 2, 2008, that he had no knowledge or involvement pertaining to whether Plaintiff received a breakfast or lunch meal on that day, that Plaintiff's lay-in status had expired after breakfast on July 2, 2008, and that he gave Plaintiff the option of going to the chow hall or cooking his own food in the housing unit day room. (Docket no. 22, Ex. I).

The Court should find that Plaintiff has failed to demonstrate that Defendant Hensley violated the Eighth Amendment by depriving him of food. Accordingly, Plaintiff's cruel and unusual punishment claim should be dismissed.

**4.      Plaintiff's Rule 56(f) Affidavit**

In response to the instant motion, Plaintiff filed a Rule 56(f) affidavit stating that he cannot get affidavits from his witnesses because he has been moved to a new facility and some of his witnesses have been released from custody. He also claims that he needs to undertake discovery in order to properly respond to the instant motion. (Docket no. 28).

Federal Rule of Civil Procedure 56(f) provides: "If a party opposing the motion shows by

12

affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed.R.Civ.P. 56(f). The party making the Rule 56(f) showing must indicate by affidavit his need for discovery, what material facts he hopes to uncover, and why he has not previously discovered the material. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). The court may, within its discretion, deny the discovery request when the party makes only general and conclusory statements regarding the need for more discovery. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (citation omitted). The party seeking additional discovery must "affirmatively demonstrat[e] . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998) (citations and internal quotation marks omitted).

The instant Motion for Summary Judgment was filed shortly after the Defendants filed their executed waivers of service with the Court. No scheduling order has been entered in this case. The Court therefore recommends that a scheduling order be entered setting cut off dates for discovery and dispositive motions as to the outstanding issues related to Defendants Flore, Shaw, Beauregard, Hensley, Thelen, and Hessbrook.

**5.      Conclusion**

For the reasons stated above, the Court recommends that Plaintiff's claims filed pursuant to 42 U.S.C. § 1983 against Defendants Ludwick, Jackson, Harrington, and Romatz be dismissed. In addition, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims of negligence against these Defendants.

The Court should further find that genuine issues of material fact exist as to whether administrative remedies were available to the Plaintiff while he was in administrative segregation and whether he was prevented from exhausting his administrative remedies as to Defendants Flore, Shaw, Thelen, and Beauregard.

Finally, assuming that the Plaintiff is not barred from proceeding against Defendants Flore, Shaw, Thelen, and Beauregard under the exhaustion mandate of the Prison Litigation Reform Act, the Court should find that genuine issues of material fact exist as to whether Defendants Hessbrook, Hensley, Flore, Beauregard, Thelen, and Shaw were deliberately indifferent to Plaintiff's serious medical needs by denying Plaintiff's requests for medical treatment following his alleged fall down the stairs. Plaintiff's cruel and unusual punishment claim related to deprivation of food should be dismissed.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 18, 2010    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Emmanuel Palmer and Counsel of Record on this date.

Dated: November 18, 2010    s/ Lisa C. Bartlett
Case Manager