UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMANUEL PALMER,

        Plaintiff,

v.

        Case Number 09-14642
        Honorable David M. Lawson
        Magistrate Judge Mona K. Majzoub

BARBRA HESSBROOK, KENNETH
FLORE, GARY HENSLEY, DOBALD
BEAURGARD, JOHN CHAPELO,
GLEN THELEN, and ERIC SHAW,

        Defendants.
_____/

## OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, SUSTAINING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION, DENYING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CHAPELO, AND CONTINUING ORDER OF REFERENCE

The matter is before the Court on the plaintiff's objections the report filed by Magistrate Judge Mona K. Majzoub recommending that the motion for summary judgment by defendant John Chapelo be granted for the plaintiff's failure to exhaust his administrative remedies. The Court entered a general order of reference to conduct all pretrial matters, after which several defendants filed their first round of summary judgment motions. Defendant Chapelo was not among them. Judge Majzoub filed her report on November 18, 2010 recommending that the motions asserting failure to exhaust administrative remedies be denied because a question of fact existed. The Court adopted that report. Defendant Chapelo then filed the present motion asserting failure to exhaust and qualified immunity. The plaintiff failed to respond to the motion. Judge Majzoub filed her report on the present motion on June 19, 2012 recommending that the motion be granted on

exhaustion grounds. She did not find that qualified immunity applied. The plaintiff filed timely objections.

The facts of the case have been discussed thoroughly by the magistrate judge in her previous reports. For context, the case was brought by the plaintiff, a Michigan prisoner, for injuries allegedly incurred while he was housed at the St. Louis Correctional Facility in St. Louis, Michigan (SLF). In 2003, before he began serving his sentence, he was shot in the right foot injuring his great toe, and as a result he alleged that he could not wear state-issued shoes comfortably. On June 29, 2008, the plaintiff sought medical treatment for foot pain. He says he was refused. As a consequence of his untreated toe injury, the plaintiff alleges that on July 1, 2008, he fell down a flight of brick and steel stairs, injuring his right hip, right shoulder, and right rib cage. He says that he was in great pain as a result of the fall, and he was not given proper medical attention for those injuries. He alleges that on July 2, 2008 he was unable to walk to his medical call-out, and that defendant Jackson told the plaintiff that if he could not walk there, he was refusing treatment, and closed the cell door. Then on July 3, 2008, the plaintiff alleges that he attempted to drag himself towards the food hall, but then collapsed to the ground in pain. The plaintiff says that defendants Flore, Beaurgard, Chapelo, Thelen, and Shaw watched the plaintiff sit in agony and plead for help for two minutes. The plaintiff alleges that defendant Flore provided a wheelchair and ordered the plaintiff to guide the chair back to his housing unit, but when the plaintiff was unable, Flores sent him to administrative segregation. The plaintiff's complaint against defendant Chapelo is directed at the July 3 incident, but not the incidents on July 1 or 2. The complaint cites 42 U.S.C. § 1983 and is based on the defendants' deliberate indifference to his serious medical needs because the defendants refused, delayed, or inadequately provided him with medical treatment. On October 14,

2011, Chapelo filed a motion for summary judgment, (1) arguing qualified immunity because he was not present when the plaintiff fell down the stairs on July 1, 2008 and (2) alleging that completed discovery shows that the plaintiff failed to exhaust his administrative remedies available to him at prison regarding his claims against Chapelo.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Under Federal Rule of Civil Procedure 56—the summary judgment rule—the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the party opposing the motion contends facts are in dispute, he may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, and applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

However, the Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). This affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants. *Ibid.*

Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted).

A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint. If the information in the grievance is too vague or imprecise, a response so indicating would tell the interested parties that more detail is necessary. However, when the prison officials address the merits of the prisoner's complaint without even mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes." *Woodford*, 548 U.S. at 89 (internal citation and quotation marks omitted).

The MDOC Policy Directive 03.02.130 requires prisoners to follow a three-step grievance process in order to properly exhaust their administrative remedies. MDOC PD 03.02.130, ¶ R (effective date 7/9/07) (Defs.'s Mot. for Summ. J. [dkt. #22], Ex. B). When a plaintiff asserts that possible misconduct by prison officials prevented the plaintiff from having his grievances heard, the plaintiff may be able to avoid the proper exhaustion requirement. *See Jones v. Smith*, 266 F.3d 399,

400 (6th Cir. 2001) (holding that a plaintiff could only be deemed to have exhausted his administrative remedies where no grievance was filed because of misconduct by prison officials if the plaintiff alleged that there was no other source for obtaining a grievance form, that he made other attempts to obtain a form, or that he attempted to file a grievance without a form).

The plaintiff objects to the magistrate's finding based on the record that the plaintiff has not shown that he was prevented from exhausting his administrative remedies while in segregation. The plaintiff maintains that the grievance process was not available to him and states that he had submitted evidence in earlier filings to support his claim. Further, the plaintiff states that when he was asked in his deposition, "In segregation is there any sort of prohibition on you filing grievances?" he answered inappropriately when he said, "no," and that he had answered believing that the question was being asked in general terms.

In his motion, defendant Chapelo argues that the plaintiff's "no" response in deposition amounts to proof that the plaintiff was in fact not prevented from exhausting his administrative remedies while in segregation. The defendant supports that argument by submitting Step I grievance forms, among them one that names Chapelo in the July 3 incident, Exhibit L, that has no identifying marks indicating that the MDOC received them.

The magistrate judge reasonably recommended the Court grant summary judgment because the defendant's submissions and the plaintiff's failure to provide evidence in response indicates that the plaintiff failed to exhaust his administrative remedies against Chapelo. However, although the plaintiff failed to respond to the defendant's motion, the record contains evidence that creates a fact question on the exhaustion issue as to defendant Chapelo.

The plaintiff alleged in a prior declaration that: (1) he filed all three of the July 4, 2008 Step I grievances that are attached to Chapelo's motion for summary judgment (Exhibits K, L, and M), but never received any response; (2) he attempted to proceed to Step II of the grievance process on each of the July 4 grievances, but did not receive a response to several kites sent to the Grievance Coordinator; (3) he never received Step II grievance forms from the Grievance Coordinator, which he requested in his kites to her office, with the result that he was unable to proceed through all three steps of the grievance process; and (4) due to the fact that he was in segregation, he had no other means to obtain grievance forms or file grievances other than sending his kites to the Grievance Coordinator. Pl.'s Resp. to Mot. for Summ. J. at 3-4 [dkt. #28], Palmer Declaration in Opp. to Mot. for Summ. J.

Chapelo argues in his motion that "Palmer's claim that he was unable to file grievances in segregation is absurd." Def.'s Mot. for Summ. J. at 8-9. Chapelo asserts that (1) the plaintiff was in segregation from July 3, 2008 to August 13, 2008; (2) in segregation, officers make rounds every thirty minutes; (3) the plaintiff had "numerous opportunities" to present his grievance form to MDOC personnel; and (4) segregation units have Assistant Resident Unit Supervisors and Resident Unit Managers who can accept grievance forms.

The plaintiff's deposition supports Chapelo's first two arguments (although the plaintiff testified officers make rounds at least every hour, not every thirty minutes). But Chapelo has offered no evidence to support his other conclusory allegations about conditions and policies in segregation. The plaintiff's explanation of his deposition testimony — that his answer that there is not "any sort of prohibition" on filing grievances while in segregation was meant in the general sense — is plausible when viewed in the context of the record. So viewed (in the light most favorable to the

-7-

plaintiff, as the Court must take it at this stage of the case), it only supports a finding that there is no general policy that prisoners are prohibited from filing; it does not support the specific assertions Chapelo makes about opportunities to file or resident unit supervisors.

Moreover, Chapelo has offered no evidence to rebut the plaintiff's specific testimony that, regardless of the general grievance policies, he was individually denied access to the grievance process while he was in the segregation unit. As the plaintiff testified:

> I sent out medical kites. I had guys across the hall from me sending me strings to, you know, send out these grievances and all types of stuff. I tried to get them so they could send it out instead of me sending it straight out, but apparently once they get it up front, they see who it is and probably dump it to the side because they don't want to, you know, deal with it or something. I don't know. But yeah, I never got any response back. I sent plenty, several kites, several medical request forms. I sent several grievances, which I still have a lot of it.
> . . .
> I started ripping the backs of the carbon copy and just sending in the white sheet because I knew that they don't, you know, give you any type of receipt as far as you sending it in, and I knew that they weren't going to let me see medical, so I started taking the back of the carbon copy off and sending the white part out just to get to medical . . . .

Def.'s Mot. for Summ. J., Ex. A, Palmer dep. 83-84.

The defendant's argument then rests on the Step I grievance form, which shows no indication that it was received by the MDOC. But this Court already has considered the same grievance form when concluding that a fact question remained as to whether administrative remedies were available to the plaintiff and whether he was prevented from exhausting his administrative remedies as to the other defendants involved in the July 3 incident. The form Chapelo attached to his motion was submitted previously by the plaintiff to this Court to support the plaintiff's argument that he was denied access to the grievance process. *See* Pl.'s Resp. to Mot. for Summ. J. at 15 [dkt. #28]. In addition, the form was accompanied by the plaintiff's affidavit asserting that he filed Step I

grievances regarding the July 3 incident, did not receive a response, and was not furnished Steps II and III forms. *Id.* at 3-4. Based on that evidence, Judge Majzoub found that a question of fact existed on whether administrative remedies were available to the plaintiff while in segregation and whether he was prevented from exhausting his remedies as to defendants Flore, Shaw, Thelen, Beauregard, and Romatz. Rep. & Rec. at 7 [dkt. #32]. This Court agreed, concluding that the state of the record at the time did not permit a conclusion that the defendants' version of the events is true and the plaintiff's is not. Op. & Order at 11 [dkt. #48]. Defendant Chapelo was not included in the previous order because he had not been served by the plaintiff. However, Chapelo's involvement in the July 3 incident is indistinguishable from the other five defendants. After completing discovery, it appears Chapelo has not offered evidence to rebut the plaintiff's assertion that he filed the grievances and that the remainder of the process was not available to him. As was the case with the prior motion for summary judgment by the other defendants, there still remains a question of fact as to whether administrative remedies were available to the plaintiff while he was in segregation and whether he was prevented from exhausting his administrative remedies as to Chapelo.

For that reason, defendant Chapelo's motion for summary judgment based on failure to exhaust administrative remedies must be denied.

The defendant's other argument in his motion is that he is entitled to qualified immunity because the plaintiff failed to show the defendant's personal involvement in the conduct that forms the basis of the complaint. The defendant contends that since he was not "present" when the plaintiff fell down the stairs on July 1, the plaintiff has failed to meet this threshold burden. The magistrate judge declined to address that argument because the amended complaint did not allege

improper conduct by Chapelo in the July 1 incident. A review of the amended complaint shows that the magistrate judge is correct on this point, and thus appropriately disposed of this argument.

Finally, Chapelo inexplicably concludes that "this Court previously dismissed the claims against Flore, Beauregard, Shaw, and Thelen regarding the July 3, 2008, incident (D/E #32 and 48)." Def.'s Mot. for Summ. J. at 6. That is not accurate. The Court's order on the prior motion for summary judgment only dismissed (1) the plaintiff's state law claims for negligence; (2) all claims against defendants Ludwick, Jackson, Harrington, and Ramatz; and (3) the plaintiff's claim for violation of the Eight Amendment against defendant Hensley for deprivation of food. The Court did not dismiss any of the other claims against any of the remaining defendants.

The Court finds that the plaintiff's objections have merit. A fact question precludes summary judgment on defendant John Chapelo's exhaustion defense.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #64] is **REJECTED**.

It is further **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #68] are **SUSTAINED**.

It is further **ORDERED** that the motion for summary judgment by defendant John Chapelo [dkt. #61] is **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Mona K. Majzoub under the previous reference order [dkt. #5] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: September 25, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 25, 2012.

                s/Deborah R. Tofil
                DEBORAH R. TOFIL