UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMANUEL PALMER,

        Plaintiff,

                                                  Case Number 09-14642

v.                                              Honorable David M. Lawson

KENNETH FLORE, GARY HENSLEY,
DONALD BEAURGARD, JOHN CHAPELO,
GLEN THELEN, and ERIC SHAW,

        Defendants.

_____/

## OPINION AND ORDER ADJUDICATING AFFIRMATIVE DEFENSE OF EXHAUSTION OF REMEDIES

Plaintiff Emmanuel Palmer filed this action against prison officials at the St. Louis Correctional Facility in mid-Michigan alleging that they were deliberately indifferent to his medical needs. The plaintiff alleged that in 2003, before he began serving his sentence, he was shot in the right foot injuring his great toe, and as a result he could not wear state-issued shoes comfortably. On June 29, 2008, the plaintiff sought medical treatment for foot pain. He says he was refused. As a consequence of his untreated toe injury, the plaintiff alleges that on July 1, 2008, he fell down a flight of brick and steel stairs, injuring his right hip, right shoulder, and right rib cage. He says that he was in great pain as a result of the fall, and he was not given proper medical attention for those injuries. He alleges that on July 2, 2008 he was unable to walk to his medical call-out, and that corrections officer Jackson told the plaintiff that if he could not walk there, he was refusing treatment, and closed the cell door. Then on July 3, 2008, the plaintiff alleges that he attempted to drag himself towards the food hall, but then collapsed to the ground in pain. The plaintiff says that defendants Flore, Beaurgard, Chapelo, Thelen, and Shaw watched the plaintiff sit in agony and plead

for help for two minutes. The plaintiff alleges that defendant Flore provided a wheelchair and ordered the plaintiff to guide the chair back to his housing unit, but when the plaintiff was unable, Flores sent him to administrative segregation.

The defendants involved in the July 3 incident responded to the complaint with the affirmative defense that Palmer failed to exhaust his administrative remedies. Summary judgment is not appropriate on that defense because fact questions preclude a ruling as a matter of law. The defendants asked the Court to decide the merits of the affirmative defense without a jury, contending that the parties have no right to a jury trial on that matter. On January 14, 2014, the Court filed an order finding that there is no right under the Seventh Amendment to have a jury determine the facts underlying the defense of exhaustion of remedies, and the Court scheduled an evidentiary hearing to determine that defense. The hearing was held on February 27, 2014. Three witnesses, including the plaintiff, testified. The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a)(1).

I.

The defendants offered evidence of the grievance procedure put in place by the Michigan Department of Corrections (MDOC) to allow inmates to complain about prison conditions. MDOC Policy Directive (PD) 03.02.130, hearing exhibit 2, requires prisoners to follow a three-step grievance process. Before engaging in the formal process, an inmate must attempt verbally to resolve the dispute with those involved within two days. PD 03.02.130(P). If the attempt is impossible or unsuccessful, the inmate must submit a Step I grievance form within five business days. PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing within fifteen business days. PD 03.02.130(X). If the inmate is not satisfied with the result,

or did not receive a response, he may file a Step II appeal within ten business days. PD 03.02.130(BB). If the inmate is not satisfied with the response or does not receive a response within fifteen business days, he may submit a Step III appeal to the Prisoner Affairs Section. PD 03.02.130(FF). A complaint is considered properly exhausted if the inmate pursues the grievance procedure through all three steps.

Emmanuel Palmer testified that he was confined in the administrative segregation unit at the St. Louis facility on July 3, 2008. He was familiar with the grievance procedure, having filed at least 20 grievances while he was at the St. Louis facility. While in administrative segregation, he was confined to his cell 23 hours each day. Rounds were made by prison guards, but he was not able to see the guards from inside his cell. He believes he was in administrative segregation for three months.

Palmer testified that he did not have any grievance forms with him in his cell, although he asked for them. He says that he was able to get the attention of an inmate across the hall who had grievance forms in his cell. Palmer tossed toss him a bar of soap, the other inmate attached the form to it, and he slid the form back to Palmer. Palmer then filled out the form, which was a five-part carbon form, and called for someone to retrieve it. When no one responded, Palmer retained the last copy of the form and slid the other copies through a crack in his cell door. Someone took the form, although Palmer does not know who it was.

Hearing exhibit 1 is a photocopy of the form Palmer submitted. There is no stamp or writing on the form indicating that it was received into the system. Palmer never received a response to the grievance. Palmer says he filed three grievances on the same day and at the same time. He says he always received written responses to his grievances except when he was in administrative

segregation. Palmer acknowledges that he did not file a Step-II or Step-III grievance concerning the July 3 incident. However, he testified that he attempted to proceed to Step II of the process, but did not receive a response to several kites (letters) sent to the grievance coordinator. He says that he never received Step II grievance forms from the Grievance Coordinator, which he requested in his kites to her office; consequently, he was unable to proceed through all three steps of the grievance process. Because he was in segregation, he had no other means to obtain grievance forms or file grievances other than sending his kites to the Grievance Coordinator.

Susan Havelka-Duma testified that she was employed as a resident unit manager at the St. Louis facility in July 2008. At that time, her job was to oversee the daily management of the segregation unit, process prisoner paperwork, arrange for court operations, and process hearings. She testified that the segregation unit housed 94 to 96 prisoners and generally was full. The St. Louis facility houses approximately 1,200 inmates. She said that she makes daily rounds of the segregation unit, which takes her about two hours to complete. Corrections officers also make rounds. She explained that prisoners may hand grievance forms to her, corrections officers, nursing staff members, resident unit supervisors, and others who may pass by a cell. When grievances are collected in the segregation unit, they are sent to an office within the prison. Havelka-Duma testified that employees could be disciplined if they ignore a grievance.

Havelka-Duma said that she often collects grievance forms from prisoners in the segregation unit. They may hand them to her, or they frequently slide the forms through the edge of the door. Each cell door has slots to allow guards to peer into the cell and slide in food trays, but those slots may be opened only from the outside.

When prison employees make rounds in the segregation unit, they generally sign "door cards," which verify that the employee was present at the cell. The door cards are preserved. No door cards were presented at the hearing. Havelka-Duma did not recognize Mr. Palmer and has no memory of him being in segregation.

Andrew Ellison testified that he was a Correction Shift Supervisor — also referred to as a Sergeant — at the St. Louis facility in July 2008. His job was to monitor the resident unit managers in the segregation unit, ensure prisoners have essential supplies, keep order, monitor cleanliness, foil escape attempts, and enforce rules prohibiting contraband. He was required to make one round of the segregation unit each day, although others made rounds more often. He said that rounds are made at least every 30 minutes, so that an officer is at each cell door at least 48 times each day. He said that protocol requires each rounding officer to look into the cell, visualize "flesh," and detect signs of breathing. It was not necessary, however, to open the cell door.

Ellison testified that accepting grievances is part of his job. Also, a prisoner can give grievances to health care staff members, resident unit managers, hearings investigators, and grievance coordinators. He testified that if a prisoner asks for a grievance form, a staff member must provide one. And each prisoner who is ordered into administrative segregation is given a kit that includes two blank grievance forms.

Ellison testified that he has no memory of Mr. Palmer and does not know if he had any interaction with him. Ellison also testified that he cannot remember if he was working and assigned to the segregation unit on July 4, 2008.

Based on the testimony, the Court finds that the following facts have been established by a preponderance. Emmanuel Palmer was confined to the administrative segregation unit at the St.

Louis Correctional Facility in St. Louis, Michigan on July 3, 2008, and was so confined for several weeks thereafter. On July 4, 2008, Palmer completed a Step-I grievance form concerning the incident of July 3, 2008 described in the complaint. (Hearing ex. 1) Palmer slid the form through the space at the side of his cell door, and the form was outside the cell door on the floor. The form was retrieved by an MDOC employee. Palmer never received a response in writing to his Step-I grievance. Palmer requested Step-II grievance forms while he was in administrative segregation but never received them. Palmer did not pursue the grievance process concerning the July 3 incident beyond the Step-I stage.

II.

The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, and applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). This affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants. *Ibid.* Proof of the defense must be

made by a preponderance of the evidence. "'The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [fact finder] of the fact's existence." *United States v. $463,497.72 in U.S. Currency*, 853 F. Supp. 2d 675, 690 (E.D. Mich. 2012) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

In this case, the plaintiff filed a Step-I grievance concerning the incident of July 3, 2008. He did that by completing the required form and sliding it through the crack in his cell door, which was apparently a common practice prisoners in administrative segregation used for submitting grievances, according to MDOC employees. The plaintiff did not receive a response to the grievance within the time allowed by PD 03.02.130. He could have proceed to Step-II at that point, and he says that he made efforts to obtain the form to do so. He certainly was well schooled in the process, and he was informed of the requirements necessary to exhaust his remedies. The Court finds it unlikely that the plaintiff would have ignored the Step-II filing if he were able to proceed with it. But it is clear that the filing never was made.

Michigan prisoners who pursue the grievance procedure through all three steps generally are found to have satisfied the PLRA requirement of exhausting their administrative remedies. But although completing Step-III is a sufficient condition, it is not always a necessary one. In *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004), the Sixth Circuit held that: "Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."

*Id.* at 996. The court of appeals later reiterated this point in *Fisher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Boyd* and referring to its rule as "well established").

In this case, Palmer submitted his Step-I grievance form in a timely manner and received no response. His efforts were sufficient to comply with the PLRA. Under those circumstances, the defendants have not established their exhaustion-of-remedies affirmative defense by a preponderance of the evidence.

### III.

For the reasons stated, the Court finds that the affirmative defense of failure to exhaust administrative remedies asserted by defendants Flore, Beaurgard, Chapelo, Thelen, and Shaw fails.

Accordingly, it is **ORDERED** that the affirmative defense of failure to exhaust administrative remedies is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 3, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 3, 2104.

s/Shawntel Jackson
SHAWNTEL JACKSON

---